IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN PATROSKI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:10-cv-00967-TFM |
| v. | ) | |
| | ) | Judge Terrence F. McVerry |
| PRESSLEY RIDGE, PRESSLEY RIDGE | ) | |
| FOUNDATION, and B. SCOTT FINNELL, | ) | Electronically Filed |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER RULE 12(b)(6)**

Defendants Pressley Ridge, Pressley Ridge Foundation and B. Scott Finnell ("Defendants") respectfully submit this brief in support of their Motion to Dismiss the Complaint. Defendants deny the allegations in the Complaint. To begin with, however, not only do Plaintiff's claims lack factual merit, but they also are legally defective and thus should be dismissed.

## INTRODUCTION

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964 and also asserts a laundry list of state law tort claims. Plaintiff cannot maintain her Title VII claims because she has failed to exhaust her administrative remedies. Title VII and its implementing regulations require the Equal Employment Opportunity Commission ("EEOC") to investigate charges of alleged discrimination and retaliation for at least 180 days before issuing a notice of right to sue. Here, Plaintiff lodged her charge with the EEOC on June 2, 2010. Then, less than one week later, Plaintiff terminated the EEOC proceedings—before they even began—by requesting a notice of right to sue, which the EEOC issued on June 8, 2010. As a result of Plaintiff's actions, therefore, the statutorily-mandated administrative process was halted before the EEOC had any possible opportunity to investigate or attempt to conciliate the charge. The EEOC issued the notice of right to sue based on 29 C.F.R. § 1601.28(a)(2), but this regulation

contravenes the express language of Title VII and has been invalidated by numerous courts.  In her rush to the courthouse, Plaintiff has failed to exhaust the administrative remedies mandated by Title VII.  Plaintiff's Title VII claims, therefore, should be dismissed.

Moreover, several of Plaintiff's alleged state law claims are legally defective on their face.  Her negligence and emotional distress claims are preempted by the Pennsylvania Workers' Compensation Act.  Her claim for breach of an alleged covenant of good faith and fair dealing fails as a matter of law because such a claim can only be made if there is a contract between the parties, and Plaintiff does not plead the existence of a contract between her and Pressley Ridge; indeed, she was an at-will employee and Pennsylvania law recognizes no such exception to at-will employment.  Her "claims" for "respondeat superior" and "piercing the corporate veil" should be dismissed because "respondeat superior" and "piercing the corporate veil" are not independent causes of action.  Nor, in any event, has Plaintiff alleged any facts that would allow a court to pierce the corporate veil—and thus her attempt to bring the Pressley Ridge Foundation into this action is fatally deficient as a matter of law.

Independently of all of these shortcomings, this Court should—in its discretion— decline to exercise jurisdiction over Plaintiff's state law claims once it determines that the federal Title VII claims should be dismissed.   Retaining jurisdiction over a lawsuit involving Pennsylvania state law claims and only Pennsylvania citizens would not serve the considerations underlying the federal supplemental jurisdiction statute—especially where the predicate for federal jurisdiction is lacking from the very outset.

## APPLICABLE LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) should be granted unless a complaint contains sufficient factual matter, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, courts must accept as true all of the complaint's factual allegations, but it need not credit its legal conclusions.  *Iqbal*,

129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s]" devoid of "further factual enhancement" likewise are insufficient to meet a plaintiff's pleading burden. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotations omitted).

In *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009), the Third Circuit recognized *Twombly* and *Iqbal* marked a change in the pleading thresholds a plaintiff must clear and that plaintiffs now are "requir[ed] … to plead more than the possibility of relief to survive a motion to dismiss"—that is, plead enough facts so that her claims move "across the line from conceivable to plausible." *Id.* at 212 (citing *Twombly*, 550 U.S. at 570). These heightened pleading standards apply with full force in the Title VII context. *Fowler*, 578 F.3d at 210; *see also Iqbal*, 129 S.Ct. at 1953 (pleading standards set forth in *Twombly* apply to "all civil actions") (internal quotations omitted).

## ALLEGATIONS OF PLAINTIFF'S COMPLAINT

In support of her claims, Plaintiff alleges as follows:  Plaintiff was employed in the Human Resources Department of Pressley Ridge.  (Complaint ¶ 8).  Beginning in late 2008 and for about a year thereafter, Finnell initiated "relaxation sessions" with Plaintiff for her benefit and for use in a "relaxation compact disk" that Finnell was creating for the Pressley Ridge Wellness Program.  (*Id.* ¶ 9).  According to Plaintiff, during the "relaxation sessions," Finnell hypnotized her and engaged in sexual behavior with her of which she had no awareness or recollection.  (*Id.* ¶¶ 9, 10, 12, 13).  Plaintiff claims that, in late 2002, she "began recalling what transpired" during the relaxation sessions.  (*Id.* ¶ 13).  She then emailed Finnell "expressing her concerns" and also spoke with a co-worker.  (*Id.* ¶ 14).  In February 2010, Plaintiff was asked to resign and execute a release, which she refused to do.  (*Id.* ¶ 15).  Subsequently, she was not allowed to attend executive committee meetings or speak with upper management, and she was

demoted from Human Resources Coordinator to Benefits Coordinator. (*Id.*) Pressley Ridge terminated her employment on June 4, 2010. (*Id.* ¶ 19).

On June 2, 2010, Plaintiff filed a charge of alleged discrimination with the EEOC. (*Id.* ¶ 18). Less than a week later, on June 8, Plaintiff requested, and the EEOC issued, a notice of right to sue. (Complaint Ex. A). The notice states that the EEOC was terminating processing of the charge at Plaintiff's request. (*Id.*). The notice further states that "[l]ess than 180 days have passed since the filing of this charge, but [the EEOC has] determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge." (*Id.*).[1]

Plaintiff now brings Title VII and state law claims against B. Scott Finnell, Pressley Ridge (her and Finnell's employer), and the Pressley Ridge Foundation (which she does not allege to be her or Finnell's employer).

## ARGUMENT

**I.     Plaintiff's Title VII Claims Should Be Dismissed Because Plaintiff Has Failed To Exhaust The Requisite Administrative Remedies.**

As noted, Plaintiff lodged her charge against Pressley Ridge with the EEOC on June 2, 2010 (Complaint ¶ 18) and, at Plaintiff's request, the EEOC terminated its processing of the charge less than a week later. (Complaint Ex. A). Thus, it is indisputable that the EEOC administrative process was terminated before the agency could undertake an investigation or conciliation efforts. Plaintiff's Title VII claims should therefore be dismissed without prejudice for failure to exhaust administrative remedies. *Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1348 (D.C. Cir. 1999) (remanding for further administrative proceedings and holding that the plaintiff "may file a new complaint … only after the [EEOC] has attempted to resolve her

---

[1] Plaintiff requested the right to sue letter so quickly that Pressley Ridge's counsel had not even had time to enter their appearances. (*See* Complaint Ex. A) (copying only Plaintiff's counsel and Dr. Finnell).

charge"); *Robinson v. Red Rose Commc'ns, Inc.*, No. 97-CV-6497, 1998 WL 221028, at *3 (E.D. Pa. May 5, 1998) (same); *see also Laye v. Potter*, No. 04-0046, 2006 WL 1617777, at *4 (W.D. Pa. June 2, 2006) (McVerry, J.) ("the timely exhaustion of administrative procedures is a precondition to the maintenance of a federal employment discrimination civil lawsuit").

A.      **The Regulation Pursuant To Which The EEOC Issued A Right To Sue Letter Before The Passage of 180 Days Contravenes The Statutory Language Of Title VII And Is Therefore Invalid.**

Title VII requires the EEOC to investigate charges of alleged discrimination and retaliation for at least 180 days before issuing a notice of right to sue. 42 U.S.C. § 2000e-5(f)(1). When the EEOC issued Plaintiff's notice of right to sue, it cited 29 C.F.R. § 1601.28(a)(2) (the "Regulation"), which purports to permit the EEOC to issue a right to sue letter prior to the expiration of 180 days so long as the EEOC certifies that the Commission probably will be unable to process the charge within 180 days. Nonetheless, the issuance of the right to sue letter was premature because as numerous courts have concluded, the Regulation is invalid for the reasons that: (1) Title VII clearly forbids the issuance of a right to sue letter before the passage of 180 days; (2) Title VII further requires the EEOC to investigate every charge; and (3) the Congressional intent embodied in Title VII is that discrimination complaints must be handled administratively and not by immediately resorting to the courts. Finally, even if the Regulation were valid, Plaintiff's Title VII claims nonetheless must be dismissed because the EEOC, in this case, did not have any opportunity whatsoever to investigate or attempt to conciliate the charge as a result of Plaintiff's rush to the courthouse.

When courts review regulations issued by administrative agencies such as the EEOC, they ask whether Congress has spoken directly to the precise question at issue. *Martini*, 178 F.3d at 1342. When congressional intent is clear, "'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id.* (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984)); *see also Lemke v. Int'l Total Servs.*, 56 F. Supp. 2d 472, 480 (D.N.J. 1999) ("While this

court must defer to the EEOC's interpretation of Title VII in its regulations if "reasonable", *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 115, … (1988), the EEOC cannot adopt regulations that are inconsistent with Congress's statutory mandate.  *See Mohasco Corp. v. Silver*, 447 U.S. 807 … (1980)."), *aff'd,* 225 F.3d 649 (3d Cir. 2000) (Table).

The precise question at issue here is whether Title VII specifies "the exclusive conditions under which Title VII complainants may bring private lawsuits in federal court." *Martini,* 178 F.3d at 1342.  Or, put another way, the question is whether "Congress clearly intend[ed] to prohibit private suits within 180 days after a charge is filed as long as the EEOC has not dismissed the charge[.]"  *Id.*

Turning to the statutory language, Title VII clearly sets forth when an allegedly aggrieved party may file suit:  "If a charge filed with the Commission … is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge … the Commission has not filed a civil action … or not entered into a conciliation agreement … the Commission …. shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge …."  42 U.S.C. § 2000e-5(f)(1).  As the Third Circuit explained, Title VII embodies Congress's intent that discrimination charges should be handled administratively by the EEOC, not through the immediate filing of lawsuits.  *Moteles v. Univ. of Pa.,* 730 F.2d 913, 917 (3d Cir. 1984) ("'Conciliation rather than formal court proceedings remains the preferred method of settling [discrimination] disputes.'  In establishing these procedures, Congress acted on the assumption that '[a]dministrative tribunals are better equipped to handle the complicated issues involved in employment discrimination cases …. [T]he sorting out of the complexities surrounding employment discrimination can give rise to enormous expenditure of judicial resources in already heavily overburdened Federal district courts.'") (quoting *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (3d Cir. 1976) and H.R. Rep. No. 238, 92d Cong., 2d Sess. 2, *reprinted in* 1972 U.S. Code Cong. & Ad. News 2137, 2146).  And Title VII is unequivocal that once a

charge is filed, the EEOC "**shall** make an investigation thereof."   42 U.S.C. § 2000e-5(b) (emphasis added).

Not surprisingly, therefore, numerous courts have held the Regulation invalid because it directly conflicts with Title VII's language and contravenes Title VII's directive that the EEOC has the responsibility to investigate charges.   In *Martini*, the EEOC invoked 29 C.F.R. § 1601.28(a)(2) and issued a right to sue letter at the plaintiff's request only twenty-one days after the plaintiff filed the charge.   178 F.3d at 1339.   The District of Columbia Circuit reversed the district court's order denying the defendant's motion to dismiss.   *Id.* at 1346.   The Court of Appeals held that the Regulation is invalid and remanded with instructions to dismiss the complaint, explaining that "[w]e cannot square this early termination of the [administrative] process or the regulation authorizing it with [Title VII's] express direction to the Commission that it investigate all charges."   *Id.*   The Court also rejected the plaintiff's argument that the waiting period is futile if the EEOC knows it will be unable to investigate the charge within 180 days, reasoning that speculative predictions of futility cannot provide a basis for ignoring the statute.   *Id.* ("[T]he [EEOC] made [its] probability determination only 21 days after [the plaintiff] filed her charge.   We do not see how such a speculative prediction of futility can justify departure from [Title VII's] express requirement that the Commission investigate every charge filed.").   The Court further noted that in promulgating Title VII, "Congress well understood that the EEOC's limited resources preclude it from investigating every charge within 180 days … but nevertheless 'hoped that recourse to the private lawsuit would be the exception and not the rule.'"   *Id.* (quoting 118 Cong. Rec. 7168).

The D.C. Circuit is not alone in concluding that the Regulation is invalid.   In *Lemke,* Judge Barry (now of the Third Circuit) concluded that Title VII's language does not permit the EEOC to issue a right to sue letter prior to the passage of 180 days following the filing of a charge:   "The language of Section 706(f)(1) is crystal clear and provides that the EEOC shall issue a right to sue letter only (1) '[i]f a charge filed with the Commission … is dismissed by the Commission…' or (2) 'if within 180 days from the filing of such charge … the Commission has

not filed a civil action under this section …'"  56 F. Supp. 2d at 480   (quoting 42 U.S.C.
§ 2000e-5(f)(1)).  Judge Barry went on to explain that it does not matter that Title VII does not
explicitly prohibit the issue of a right to sue letter before the passage of the 180 days:  "[T]o
accept the position that Section 706(f) does not prohibit the issuance of a notice of right to sue
before 180 days would be to ignore the … phrasing of the statute."  *Id.* (internal quotation marks
and citation omitted).   Thus, Judge Barry held that "Plaintiff's request for a right to sue letter
only fourteen days after her charge was filed—and the EEOC's facilitation of this bypass of the
administrative process by issuing the letter only six days later—flies in the face of both the plain
language of Title VII and Congress' intent that discrimination charges be administratively
investigated and at least initially addressed by conciliation attempts rather than civil actions."  *Id.*
at 481.

      Another district court came to the same conclusion, holding that the occurrence of
one of the two events set forth in Title VII (administrative dismissal or the passage of 180 days)
"is a necessary—not merely a sufficient—condition for commencement of private civil action."
*Spencer v. Banco Real, S.A.*, 87 F.R.D. 739, 743 (S.D.N.Y. 1980).  As the *Spencer* court further
noted, the Regulation is invalid because it "permits the agency to expand federal jurisdiction
whenever an aggrieved claimant is impatient with the normal waiting period and the agency feels
unable to complete its tasks within the statutory period … The EEOC's regulation is inconsistent
with what Congress intended and unsupported by sound policy considerations."  *Id.* at 746-47.
Moreover, the fact that Title VII explicitly provides the EEOC—but not private parties—access
to the courts prior to the passage of 180 days, "necessarily suggests that private parties were not
to be permitted such access as a routine matter."  *Id.* at 744.[2]

----

[2] *See also Robinson*, 1998 WL 221028, at *3 (the Regulation "emasculates Congressional intent
by short circuiting the twin objectives of investigation and conciliation"); *Montoya v. Valencia
County,* 872 F. Supp. 904, 906 (D.N.M. 1994) (the Regulation is "patently inconsistent with"
Title VII); *Farmer v. Gulf Oil Co.,* No. 83-1059, 1984 WL 1052, at *2 (D. Colo. Apr. 19, 1984)
("We do not envision that filing a charge with the EEOC is a façade.  This is a procedural step
Continued on following page

While the Third Circuit has not directly addressed the validity of the Regulation, it has described the *Spencer* decision as "thoughtful," noting the Congressional preference for administrative handling of discrimination charges and stating:  "[P]remature resort to the district court should be discouraged as contrary to congressional intent.  The preference for conciliation as the dispute resolution method in employment discrimination proceedings should not be undermined by a party's deliberate by-pass of administrative proceedings."  *Moteles*, 730 F.2d at 917 (citing *Spencer*, 87 F.R.D. 743); *see also Lemke*, 56 F. Supp. 2d at 480 (noting "the disapproving tenor of the Court of Appeals for the Third Circuit in *Moteles* and the various district courts which have held that the EEOC exceeded its authority in issuing a regulation which allows for early right to sue letters").

In short, the clear weight of authority holds that the Regulation is invalid.  Indeed, the facts of this case—where Plaintiff rushed to court before the EEOC had time to even begin the administrative process—is a stark illustration of how an application of the Regulation contravenes Title VII's express purposes.  Plaintiff did not exhaust her administrative remedies, and thus her Title VII claims should be dismissed.

**B.    Even If The Regulation Were Valid, The Right To Sue Letter Was Issued Prematurely In This Case Because The EEOC Did Not Have The Opportunity To Carry Out Its Statutory Responsibility To Investigate Or Attempt To Conciliate Plaintiff's Claims.**

The statutory language of Title VII requires the EEOC to investigate every charge it receives.  42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed … the Commission … shall make an investigation thereof.").  And so "[t]he EEOC should not be regarded as a minor detour on the way to court …." *Seybert v. W. Chester Univ.,* 83 F. Supp. 2d 547, 553 (E.D. Pa. 2000) (upholding the Regulation, but cautioning that "[t]he regulation's validity … should not

---

Continued from previous page
that should not be bypassed; else serious questions are raised as to the purpose of the Commission and the EEOC legislation is thus subverted.").

presuppose its unfettered applicability. A policy objective of Title VII was to promote informal resolution of employment discrimination disputes. Early right to sue notices should not be issued as of course. A cooling off period can have value .… [and] every case should at least be screened for the possibility of early conciliation .…"). Thus, the EEOC must perform some investigation and conciliation of the charge prior to issuing any right to sue letter—no matter whether it issues the letter seven or 177 days after the charge is filed.

Here, Plaintiff requested and received her right to sue letter just six days after she filed her charge. There was no cooling off period and no opportunity for early conciliation. In short, Plaintiff impermissibly treated the EEOC as a "minor detour on the way to court." *Seybert,* 83 F. Supp. 2d at 553. Thus, even if the Regulation were valid—which it is not— Plaintiff's Title VII claims should be dismissed for the independent reason that in ***her case***, the EEOC did not have any opportunity to investigate or attempt to conciliate her charge as required by Title VII.

## II.    Plaintiff's Retaliatory Discharge Claim Should Be Dismissed Because Plaintiff Did Not File Any Charge At All With The EEOC Regarding That Claim.

Count 3 of the Complaint alleges retaliatory discharge, but Plaintiff never filed a charge with the EEOC with respect to that claim. In certain circumstances, courts will decline to conclude that the plaintiff failed to exhaust administrative remedies where (1) the plaintiff's employment is terminated after the filing of an EEOC charge making other allegations, (2) the charge is not amended, and (3) the EEOC does in fact investigate the allegations of retaliatory discharge. But there was no such investigation here. Therefore, Count 3 should be dismissed for the additional reason that Plaintiff never filed an EEOC charge with respect to this claim. *Laye*, 2006 WL 1617777, at *4 ("[T]he timely exhaustion of administrative procedures is a precondition to the maintenance of a federal employment discrimination civil lawsuit … [A]ccordingly, Plaintiff cannot choose to bypass the administrative machinery by raising new theories of recovery for the first time in a federal court action").

**III.    Plaintiff's Negligence And Emotional Distress Claims Should Be Dismissed Because Pennsylvania's Workers' Compensation Scheme Provides The Exclusive Remedy For These Claims.**

Plaintiff's complaint includes claims against Pressley Ridge for intentional infliction of emotional distress ("IIED," Count 8), negligent hiring and supervision (Count 9), and negligent infliction of emotional distress ("NIED," Count 10). Each of these claims should be dismissed because they are preempted and barred, as a matter of law, by the exclusivity provision of the Pennsylvania Workers' Compensation Act ("WCA"), 77 P.S. § 481(a), which provides:

> The liability of an employer under this act shall be *exclusive* and in place of any and all other liability to such employes … entitled to damages in *any action at law* or otherwise on account of *any injury* ….

77 P.S. § 481(a) (emphasis added).

The Pennsylvania Supreme Court has made clear that the WCA is the sole, exclusive remedy for an employee's alleged injuries of any nature suffered during the course of her employment, whether caused by negligent or even intentional conduct. *Poyser v. Newman & Co., Inc.*, 522 A.2d 548, 550-51 (Pa. 1987); *Lewis v. Sch. Dist. of Phila.*, 538 A.2d 862, 867 (Pa. 1988) ("the workmen's compensation law is a worker's exclusive remedy against his employer for an injury sustained in the course and scope of employment"); *Kline v. Arden H. Verner Co.*, 469 A.2d 158, 160 (Pa. 1983) (the exclusivity provision "bars tort actions flowing from *any* work-related activity") (emphasis in original); *see also Shaffer v. Proctor & Gamble*, 604 A.2d 289, 292-93 (Pa. Super. 1992).

Pennsylvania state and federal courts routinely have held that the WCA's exclusivity provision bars employees from asserting tort claims against their employers, including claims for IIED and NIED. *Poyser*, 522 A.2d at 550-51; *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 160 n.16 (3d Cir. 1999); *Doe v. Shapiro*, 852 F. Supp. 1246, 1253-54 (E.D. Pa. 1994) (IIED claim based on improper conduct before termination as well as the termination itself); *McMahon v. Impact Sys., Inc.*, No. 91-6060, 1992 WL 95920, at *4 n.2 (E.D. Pa. Apr. 22, 1992) (IIED claim arising from gender discrimination); *McInerney v. Moyer Lumber and*

*Hardware, Inc.*, 244 F. Supp. 2d 393, 400-01 (E.D. Pa. 2002) (IIED claims); *Hettler v. Zany Brainy, Inc.*, No. 99-3879, 2000 WL 1468550 (E.D. Pa. Sept. 27, 2000) (WCA bars tort claims including negligence, NIED, IIED and loss of consortium); *Glickstein v. Consolidated Freightways*, 718 F. Supp. 438, 440 (E.D. Pa. 1989) (IIED claim); *Kinnally v. Bell of Pa.*, 748 F. Supp. 1136, 1143 (E.D. Pa. 1990) (IIED claims in Title VII action alleging sexual harassment); *Van Horn v. Elbeco Inc.*, No. 94-2720, 1996 WL 385630, at *15 (E.D. Pa. July 10, 1996) (same); *James v. Int'l Bus. Machs. Corp.*, 737 F. Supp. 1420, 1427 (E.D. Pa. 1990) (same).

As Plaintiff's Complaint makes clear, all of the alleged conduct forming the basis of her negligence, IIED, and NIED claims occurred exclusively in the workplace and during the course of her employment.  (Complaint ¶¶ 9, 10, 74) (alleged "relaxation sessions" took place in Finnell's office, "were appropriately part of [Plaintiff's] duties as a member of the Pressley Ridge Human Resources Department," and were "within the scope of [Finnell's] duties [as] … part of the … Wellness Program").  Accordingly, based on well-settled case law and clear statutory language, Plaintiff's negligence, IIED, and NIED claims against Pressley Ridge should be dismissed with prejudice as preempted and barred by the exclusivity provision of the WCA.

**IV.    Plaintiff's Claim For Breach Of An Alleged Covenant Of Good Faith And Fair Dealing Should Be Dismissed Because Pennsylvania Does Not Recognize Such A Claim In The Employment Context.**

Plaintiff's claim for "Breach of the Covenant of Good Faith and Fair Dealing" (Count 11) fails as a matter of law for at least two reasons.  First, good faith and fair dealing allegations can be made only where there is a contract between the parties.  And, even where there is such a contract, a party cannot make out a breach of contract claim based on good faith and fair dealing allegations alone, but instead must plead and prove the breach of a specific contractual terms.  Plaintiff here pleads neither the existence of a contract nor the breach of a specific term of any supposed contract.  Indeed, Plaintiff cannot make out such a claim because

she was an at-will employee and Pennsylvania does not recognize a claim for a breach of an alleged covenant of good faith and fair dealing in the at-will employment context.

In Pennsylvania, "[w]here a duty of good faith arises, it arises under the law of contracts, not under the law of torts." *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. 2002). A breach of the covenant of good faith and fair dealing is not a freestanding claim, so "courts generally treat a breach of [the duty of good faith] as a breach of contract action." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 883 (Pa. 2007). Thus, in order to assert a breach of a covenant of good faith and fair dealing, there must be a contract between the parties and that contract must have been breached. In Count 11, Plaintiff alleges that "the contract of employment between [Plaintiff] and Pressley Ridge contained a covenant of good faith and fair dealing implied by law." (Complaint ¶ 71). Despite her attempt at artful phrasing, Plaintiff has not alleged that her employment was governed by a written contract. "[B]ecause the at-will doctrine is a presumption, the burden of proving that one is not employed at-will rests squarely upon the employee." *Rutherford v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 503 (Pa. Super. 1992). Plaintiff has not alleged any facts that demonstrate that she would be able to carry this burden. Because Plaintiff has not pleaded the existence of a contract between her and Pressley Ridge, she cannot state a claim for breach of the covenant of good faith and fair dealing.[3]

Moreover, Plaintiff's good faith and fair dealing claim is defective as a matter of law because "it is well-settled that no such cause of action is recognized in Pennsylvania" as an exception to the at-will doctrine. *Rutherford*, 612 A.2d at 506, 507 n.6. Thus, Count 11 should be dismissed with prejudice.

---

[3] Nor has Plaintiff attached a copy of any supposed contract to her complaint.

**V.      Plaintiff's Claim Of "*Respondeat Superior*" Should Be Dismissed Because Respondeat Superior Is Not A Cause Of Action.**

Count 12 of Plaintiff's complaint is titled "Twelfth Cause of Action Against Pressley Ridge – *Respondeat Superior*."  But respondeat superior is not a cause of action (for instance, it is not a contract claim or a tort claim).  Respondeat superior is instead a theory of liability, *i.e.*, a way to hold a principal such as an employer responsible for conduct of its agent or employee.  *See, e.g., Loyle v. Hertz Corp.*, 940 A.2d 401, 405 (Pa. Super. 2007) (describing respondeat superior as "theor[y] by which a business entity may be held liable for the tortious conduct of another related business entity").  Because a "claim" of "respondeat superior" does not state any cause of action, Count 12 should be dismissed with prejudice.[4]

**VI.     The Claim To "Pierce The Corporate Veil" Should Be Dismissed Because Plaintiff's Veil-Piercing Is A Theory Of Liability, Not A Cause Of Action—And Pressley Ridge Foundation Should Be Dismissed From The Case Because Plaintiff Does Not Allege Any Facts That Would Allow The Veil To Be Pierced.**

In Count 13, Plaintiff purports to assert a "Cause of Action to Pierce Corporate Veil of Pressley Ridge to Reach the Foundation."  This claim fails as a matter of law for multiple reasons.

To begin with, piercing the corporate veil is not a cause of action, but a "means of assessing liability."  *Village at Camelback Prop. Owners Ass'n v. Carr*, 538 A.2d 528, 532 (Pa. Super. 1988); *see also Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.*, 643 F. Supp. 2d 675, 694-95 (E.D. Pa. 2009) ("Piercing the corporate veil is not an independent cause of action, but is an equitable remedy that may be imposed by the court ….") (internal quotation marks, alterations, and citation omitted).  For this reason alone, the "piercing" claim should be dismissed with prejudice.

---

[4] With respect to those claims where Plaintiff believes she can hold Pressley Ridge responsible for the alleged misconduct of its employees, she names Pressley Ridge as a defendant—so a separate count labeled "respondeat superior" is unnecessary.  (*See* Complaint ¶¶ 52-59).

Presumably, Plaintiff has asserted the "piercing" claim as justification for naming the Pressley Ridge Foundation as a defendant.  Plaintiff cannot invoke respondeat superior against the Foundation, so she turns instead to the theory of piercing the corporate veil.  Plaintiff, however, has not pled any facts that would warrant veil-piercing in this case.  Her "naked assertion[s]"—that Pressley Ridge and the Foundation are "one business" and that the Foundation exists to "sequester assets"—are "devoid of factual enhancement" and therefore insufficient.  *Iqbal*, 129 S.Ct. at 1949.  Simply put, under federal pleading standards, Plaintiff has not alleged facts that would permit this Court "to infer more than the mere possibility" that the corporate veil should be pierced.  *Iqbal*, 129 S.Ct. at 1950.

The deficiency of Plaintiff's piercing allegations is particularly clear in light of Pennsylvania's "strong presumption … against piercing the corporate veil" and Pennsylvania courts' concomitant focus on whether specific factors have been met that would justify veil-piercing in any given instance.  *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995) ("Care should be taken … to avoid making the entire theory of corporate entity useless …. [F]actors to be considered in disregarding the corporate form [are]: undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud."); *Miners, Inc. v. Alpine Equip. Corp.*, 722 A.2d 691, 694-95 (Pa. Super. 1998) ("[T]he court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual, circumstances call for an exception …. [The veil may be pierced where] two or more corporations [share] identity of ownership, unified administrative control, similar or supplementary business functions, involuntary creditors, and insolvency of the corporation against which the claim lies.").  And Pennsylvania has not adopted the "single entity" or "enterprise entity" theory for piercing the corporate veil—the theory Plaintiff seemingly invokes in her threadbare allegations.  *Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*, 846 A.2d 1264, 1278 n.9 (Pa. Super. 2004).

**VII.    This Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims.**

As noted, this Court should dismiss Plaintiff's Title VII claims.  Once those federal claims are dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  The supplemental jurisdiction statute provides this Court with jurisdiction over Plaintiff's state law claims for assault and/or battery[5], fraudulent misrepresentation[6], intentional and negligent infliction of emotional distress, negligent hiring and supervision, and breach of the covenant of good faith and fair dealing, as well as the so-called claims for "respondeat superior" and "piercing the corporate veil."  28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").  The supplemental jurisdiction statute also provides that a district court "may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

When a district court has dismissed all of the claims over which it has original jurisdiction, it should base its decision whether to dismiss state law claims on considerations of "judicial economy, convenience and fairness to the litigants." *New Rock Asset Partners, L.P. v. Preferred Equity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)); *see also Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. Pa. 2009).  Here, these considerations would not be served by continued exercise of jurisdiction over this action after the Title VII claims are dismissed.

It is particularly appropriate for this Court to exercise its discretion to dismiss under Section 1367(c)(3) where, as here, a Pennsylvania citizen has filed Pennsylvania state law

---

[5] The complaint variously refers to "sexual battery" and "sexual assault."  (Complaint ¶¶ 1, 35-37).  Pennsylvania law does not recognize such a cause of action.

[6] Plaintiff's claims against Finnell and Pressley Ridge for "fraudulent misrepresentation" (Count 5) and against Finnell for "fraud" (Count 6) are entirely duplicative of one another.

tort claims against citizens of Pennsylvania.  Upon dismissal, the claims can be tried where they ought to be tried—in Pennsylvania state court.  All considerations of fairness and convenience also point in the same direction—particularly since this is not a situation where the parties have spent time litigating in federal court, or where this Court has become familiar with the case over the course of months of litigation. The federal claims should be dismissed for failure to exhaust administrative remedies, and there is no reason for this Court to retain jurisdiction over the remaining state law claims.

## CONCLUSION

For all of these reasons, Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted,

/ s / Martha Hartle Munsch
Martha Hartle Munsch
PA I.D. No. 18176
mmunsch@reedsmith.com
Kim M. Watterson
PA I.D. No. 63552
kwatterson@reedsmith.com
REED SMITH LLP
Firm I.D. No. 234
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone:    (412) 288-4118
Fax:             (412) 288-3063

Counsel for Defendants

DATED:  August 16, 2010

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Brief in Support of Motion to Dismiss Complaint was filed electronically on this 16th day of August, 2010.  Notice of this filing will be sent by operation of the ECF system to all counsel of record.  Parties may access this filing through the Court's ECF system.

/ s / Martha Hartle Munsch
Counsel for Defendant