**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN PATROSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **2:10-cv-967** |
| **v** | ) | |
| | ) | |
| **PRESSLEY RIDGE, PRESSLEY RIDGE FOUNDATION and B. SCOTT FINNELL** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court is a MOTION TO DISMISS UNDER RULE 12(b)(6) filed by Defendants Pressley Ridge, Pressley Ridge Foundation, and B.Scott Finnell (Doc. No. 3), with brief in support (Doc. No 4), PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS (Doc. No. 8), and Defendants' reply brief (Doc. No. 13). Defendants move to dismiss the complaint based upon that which they contend is Plaintiff's failure to exhaust the requisite administrative remedies under Title VII. *See generally*, Doc. Nos. 3 and 4. Defendants further move to dismiss with prejudice various state law claims for respective failures to state a claim for which relief can be granted, or, in the alternative, for the Court to decline to exercise supplemental jurisdiction over the state law claims should the federal claims be dismissed. *Id.* Plaintiff opposes the motion to dismiss. Doc. No. 8. The issues has been fully briefed and the motion is ripe for disposition. For the reasons that follow, the motion will be granted to the extent that the federal claims over which the Court has original jurisdiction will be dismissed, and the Court will decline to exercise supplemental jurisdiction over the others.

**Background**

Plaintiff initiated this action with the filing of her complaint on July 22, 2010 in which

she alleged thirteen counts under both federal and state law, all of which relate to sexual harassment and retaliation. *See* Doc. No. 1. Jurisdiction of this Court is premised upon the first three counts, federal claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq*. *Id.* The following facts are from Plaintiff's complaint.

In 2008, Plaintiff began working in the Human Resources Department of Pressley Ridge. *Id.* at ¶ 8. On December 24, 2008, Plaintiff alleges that she was required to participate in a "relaxation session" as part of the Pressley Ridge Wellness Program then being developed by Defendant Finnell, the Chief Executive Officer of Pressley Ridge. *Id.* at ¶ 9. Plaintiff avers that the relaxation session was actually hypnosis, and that similar sessions continued thereafter on frequent occasions for approximately a year, each time behind closed doors and on a couch in Defendant Finnell's office. *Id.* at ¶ 10. According to Plaintiff, she was repeatedly sexually harassed and molested by Defendant Finnell during these sessions after being placed under hypnosis. *Id.* at ¶¶ 10 and 11. Beginning in December 2009, Plaintiff began recalling what occurred during these relaxation sessions. At some point thereafter, Plaintiff expressed her concerns to Defendant Finnell in an electronic mail message, and also began discussing what occurred with other employees. *Id.* at ¶ 14. These developments resulted in "a material deterioration in the conditions" of Plaintiff's employment that included a request that she resign on February 22, 2010 (which she declined to do). *Id.* at ¶¶ 15 - 16. In April, 2010, Plaintiff brought these circumstances to the attention of the Pressley Ridge Board of Directors and requested redress, to no avail. *Id.* at ¶ 17.

On June 2, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC" or "Commission"). *Id.* at ¶ 18. On June 4, 2010, Plaintiff's

employment with Defendant Pressley Ridge was terminated. *Id.* at ¶ 19. On June 8, 2010, at Plaintiff's request, the EEOC issued a "right-to-sue" letter which authorized her to initiate legal action in federal court. Doc. No. 1 at Exhibit A.

**Analysis**

The 1972 amendments to Title VII established "an integrated, multistep enforcement procedure" prescribing the powers and duties of the EEOC once a discrimination charge has been filed. *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (discussing the Equal Employment Opportunity Act of 1972, Pub.L. No. 92-261, 86 Stat. 103, 104-07 (codified as the enforcement provisions of Title VII at 42 U.S.C. § 2000e-5)). The enforcement procedure begins when a charge is filed with the EEOC alleging that an employer has engaged in an unlawful employment practice. A charge must be filed within 180 days after the occurrence of the allegedly unlawful practice, and the EEOC is directed to serve notice of the charge on the employer within 10 days of filing. 42 U.S.C. § 2000e-5(e). The EEOC is then required to investigate the charge and determine whether there is reasonable cause to believe that which is alleged is true. This determination is to be made "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." *Id.* at § 2000e-5(b). If the EEOC finds that there is reasonable cause it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id*. When "the Commission (is) unable to secure . . . a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." *Id.* at § 2000e-5(f)(1).

If a charge is dismissed by the EEOC, or if after 180 days from the filing of the charge, the EEOC has neither filed a civil action or entered into a conciliation agreement and upon the request of the complainant, the EEOC "shall so notify the person aggrieved and within ninety days after giving such notice a civil action may be brought against the respondent..." *Id.* In 1977, the EEOC promulgated a regulation that purported to authorize the Commissioner to issue an early right-to-sue notice. In particular, 29 C.F.R. § 1601.28(a)(2) provides that the EEOC may, upon a complainant's request, authorize a private suit:

> at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided that [an appropriate Commission official] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect.

*Id.* As previously stated, Plaintiff filed her EEOC complaint on June 2, 2010. On June 8, 2010, pursuant to 29 C.F.R. § 1601.28(a)(2), and only six days after the filing of the EEOC complaint, an early right-to-sue notice was issued at her request.

The Court notes that this 180 day waiting period is not jurisdictional. As the Supreme Court said in *Zipes v. Trans World Airlines, Inc,*, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). The Court wrote:

> The provision granting district courts jurisdiction under Title VII, 42 U.S.C. §§ 2000e-5(e) and (f), does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC. It contains no reference to the timely-filing requirement. The provision specifying the time for filing charges with the EEOC appears in an entirely separate provision and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.

*Id.* at 393-94, 102 S.Ct. 1127.

As both parties briefed, courts are divided as to whether, under 29 C.F.R. § 1601.28(a)(2), the EEOC's early issuance of a right-to-sue letter presents an impediment to proceeding with a Title VII claim in federal court. The Eleventh and Ninth Circuits in *Sims v. MacMillan*, 22 F.3d 1059 (11th Cir.1994) and *Saulsbury v. Wismer and Becker, Inc.*, 644 F.2d 1251 (9th Cir.1980) held that when the EEOC issues a right-to-sue letter at a claimant's request and prior to the expiration of 180 days from the filing of the complaint with the Commission, the premature issuance by the EEOC does not preclude the complainant from filing suit in the appropriate federal court. Other district courts have joined the Eleventh and Ninth Circuits, including one decision from this district. *See Palumbo v. Lufthansa German Airlines*, 98 CV 5005, 1999 WL 540446 (S.D.N.Y. July 26, 1999); *Rosario v. Copacabana Night Club, Inc.*, 97 CV 2052, 1998 WL 273110 (S.D.N.Y. May 28, 1998); *Figueira v. Black Entertainment Television*, 944 F.Supp. 299 (S.D.N.Y.1996); *Parker v. Noble Roman's, Inc.*, IP-96-65-C-D/F, 1996 WL 453572 (S.D.Ind. June 26, 1996); *Martinez v. Labelmaster*, 96 C 4189, 1996 WL 580893 (N.D.Ill. Oct.4, 1996); *Defranks v. Court of Common Pleas*, 95-327, 1995 WL 606800 (W.D.Pa. Aug.17, 1995); *Rolark v. University of Chicago Hosps.*, 688 F.Supp. 401 (N.D.Ill.1988); *Cattell v. Bob Frensley Ford, Inc.*, 505 F.Supp. 617 (M.D.Tenn.1980); *Vera v. Bethlehem Steel Corp.*, 448 F.Supp. 610 (M.D.Pa.1978); *Howard v. Mercantile Commerce Trust Co.*, 74-417C(1), 1974 WL 302 (E.D.Mo. Nov.27, 1974).

The *Defranks* decision, *supra*, references the same rationale utilized in the Eleventh Circuit decision in *Sims*, *supra*, underlying the permissibility of the EEOC's premature issuance of a right-to-sue letter. 1995 WL 606800 ("An oft cited rationale for offering a plaintiff the right

to sue exception is to protect the claimant from administrative backlog.") In *Sims*, the Eleventh Circuit held:

> the purpose of the 180-day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog; and ... where the EEOC determines, due to its huge backlog, that it cannot investigate an aggrieved party's charge within the 180-day period and notifies the aggrieved party that it is terminating its investigative efforts, it is pointless for the aggrieved party to stand by and mark time until the 180-day period expires.

*Sims*, 22 F.3d at 1061.

In contrast, the United States Court of Appeals for the District of Columbia Circuit in *Martini v. Federal Nat'l Mortgage Ass'n*, 178 F.3d 1336 (D.C.Cir.1999) has concluded that the "EEOC's power to authorize suits within 180 days undermines its express statutory duty to investigate every charge filed, as well as Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." *Id.* at 1347. Many district courts have similarly concluded that the 180 day waiting period is a prerequisite to filing a claim in federal court. *See Stetz v. Reeher Enters., Inc.*, 70 F.Supp.2d 119, 1999 WL 636598 (N.D.N.Y.1999); *Olszewski v. Bloomberg L.P.*, 96 CV 3393, 1997 WL 375690 (S.D.N.Y. July 7, 1997); *Pearce v. Barry Sable Diamonds*, 912 F.Supp. 149 (E.D.Pa.1996); *Montoya v. Valencia County*, 872 F.Supp. 904 (D.N.M.1994); *Henschke v. New York Hospital-Cornell Medical Ctr.*, 821 F.Supp. 166 (S.D.N.Y.1993); *Wilk v. Intercontinental Hotel of New York*, 92 CV 2068, 1993 WL 88230 (S.D.N.Y. March 24, 1993); *True v. New York State Dep't of Correctional Serv.*, 613 F.Supp. 27 (W.D.N.Y.1984); *New York v. Holiday Inns, Inc.*, 656 F.Supp. 675 (W.D.N.Y.1984); *Mills v. Jefferson Bank East*, 559 F.Supp. 34 (D.Colo.1983); *Spencer v. Banco Real, S.A.*, 87 F.R.D. 739 (S.D.N.Y.1980); *Loney v. Carr-Lowrey Glass Co.*, 458 F.Supp. 1080 (D.Md.1978).

In *Martini*, the plaintiff was employed by the Federal National Mortgage Association when she alleged that one of her co-workers began to sexually harass her by making abusive comments. The employee who is alleged to have harassed the plaintiff was eventually promoted and oversaw a reorganization that included the termination of the plaintiff. As a result, the plaintiff filed a harassment and retaliation charge with the EEOC, and 21 days later, at her request, the EEOC issued a premature right-to-sue letter pursuant to 29 C.F.R. § 1601.28(a)(2). The Court in *Martini* began its analysis by examining 42 U.S.C. § 2000e-5(b), pointing out that, "although the statute allows some flexibility in the timing of reasonable cause determinations, the Commission's duty to investigate is both mandatory and unqualified." *Martini*, 178 F.3d at 1346. In addition, the D.C. Circuit examined the legislative history of section 2000e-5(f)(1) and noted that "[w]hile the House version of ... what is now section 2000e-5(f)(1) authorized private actions after 180 days, the Senate version authorized private actions after only 150 days. Noting this discrepancy, the conference committee chose the 180-day period." *Id.* at 1347. (citations omitted). The Court went on to conclude that:

> [a]lthough this alone does not unequivocally show that Congress was unwilling to permit private suits within 180 days-Congress simply might have been unwilling to guarantee the right to sue within 180 days.... [B]y choosing 180 days instead of 150 days, Congress indicated its belief that informal resolution of charges, even as late as the 180th day, would be preferable to allowing complainants to sue earlier.

*Id.* In support of this conclusion, the Court cited the Congressional Record of two Senators who sponsored the bill. Senator Javits stated that the 180 day requirement required complainants "necessarily [to] sit [ ] around waiting 6 months." *Id.* (citation omitted). Senator Dominick called it a "180-day private filing restriction." *Id.* Finally, the Court in *Martini* summarized its findings, stating that "... we conclude that the EEOC's power to authorize private suits within 180

days undermines its express statutory duty to investigate every charge filed, as well as Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." *Id.*

With this backdrop, the Court considers the motion *sub judice*. Obviously, there are a number of factors at work here. The statutory framework of Title VII establishes the general responsibility of preventing employment discrimination with the EEOC, and provides specific tools to do so, including the authority to, *inter alia*, investigate the charge of discrimination, make a determination of whether reasonable cause exists to support the charge within 120 days of the filing of the charge, and, if reasonable cause does exist, to engage in informal methods of conference, conciliation, and persuasion to eliminate the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(b).

As the Third Circuit Court of Appeals noted in *Moteles v. University of Pennsylvania*, "Conciliation rather than formal court proceedings remain the preferred method of settling [discrimination] disputes." 730 F.2d 913, 917 (3d Cir. 1984)(internal quotation omitted). In order to carry out its mission, the EEOC is empowered "to issue, amend, or rescind suitable procedural regulations to carry out the provisions of [the act]." 42 U.S.C. § 2000e-12(a). In part, those regulations contain unambiguous regulatory language, such as the requirement that the EEOC "shall promptly issue" a right to sue letter if requested in writing by a complainant after 180 days from the date of the filing of the charge. 29 C.F.R. § 1601.28(a)(1). Those regulations also contain discretionary authority, such as the authority to issue a right-to-sue letter before the passage of 180 days from the date of the charge. 29 C.F.R. § 1601.28(a)(2). This discretionary authority is qualified to the extent that it can be exercised only upon the independent determination of an appropriate EEOC official that "it is probable that the Commission will be

unable to complete its administrative processing of the charge within 180 days ... and has attached a written certificate to that effect." *Id*.

In this case, an official exercised said discretion and issued a right-to-sue letter upon Plaintiff's request a mere six days after the charge of discrimination was filed. Defendants ask this Court to join the chorus of other courts that have considered somewhat similar circumstances and held that the regulation permitting such early issuance to be invalid as thwarting the purposes of Title VII. The Court notes, however, that the question before it does not present an either/or proposition; in other words, the answer is not limited to a choice between the conclusion that the regulation is invalid and therefore the early right-to-sue letter was invalid, or that the regulation is valid and therefore the early right-to-sue letter is valid as well. There is a subtle but distinct difference between finding that the authority to exercise a degree of discretion is invalid, as compared to finding that the discretion was improperly exercised. As a practical matter, the ability to exercise discretion acknowledges that an independent degree of judgment will be required within the context of a particular issue that accounts for and furthers, *inter alia*, the purposes of the grant of the authority.

This Court does not find the regulation to be invalid. Under the guidance of the Supreme Court decision in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.t. 2778, 81 L.Ed.2d 694 (1984), the Court will undertake a two-tiered analysis in reviewing the EEOC's regulation enforcing the statute. 467 U.S. at 842, 1043 S.Ct. 2778. First is the question whether Congress has spoken directly to the precise question at issue. If the intent of Congress is clear, that is the end of the matter, and the agency and a reviewing court must give effect to the unambiguously expressed intent of Congress. If, however, the Court determines Congress has

not directly addressed the precise question at issue, it would not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the Court considers whether the agency's answer is based on a permissible construction of the statute. *Id.* at 842-43, 104 S.Ct. 2778. In so doing, both the statutory language and the legislative history are examined. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988). If the intent of Congress is unclear or is ambiguous, deference should be given to the agency's interpretation so long as it is reasonable. *See Chevron*, 467 U.S. at 844, 104 L.Ed.2d 2778 ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.")

To that end, the Court notes that the statutory text of § 2000e-5(f)(1) is ambiguous in terms of the conditions for bringing suit in federal court within 180 days from filing the charge of discrimination. While the EEOC is obligated to issue a right-to-sue letter upon request after 180 days have passed without conciliation or filing suit, or upon the dismissal of the charge, the statute itself does not stake out as a condition precedent to a private lawsuit six months inaction.

The legislative history does little to clarify the issue. As a general matter, the Court notes the cautionary language of the Supreme Court when it comes the consideration of legislative history:

> As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms. Not all extrinsic materials are reliable sources of insight into legislative understandings, however, and legislative history in particular is vulnerable to two serious criticisms. First, legislative history is itself often murky, ambiguous, and contradictory. Judicial

> investigation of legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an exercise in "'looking over a crowd and picking out your friends.'" *See* Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L.Rev. 195, 214 (1983). Second, judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members-or, worse yet, unelected staffers and lobbyists-both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.

*Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 568-69, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005).

Here, the legislative history does little to shed a reliable light on the otherwise ambiguous terms. On one hand, the history depicts the EEOC as the preferred tribunal for resolving employment discrimination claims, observing that "[a]dministrative tribunals are better equipped to handle the complicated issues involved in employment discrimination cases." H.R.Rep. No. 92-238 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2146. Private lawsuits, Congress envisioned, would be "the exception and not the rule." 118 Cong.Rec. 7168. On the other hand, however, the legislative history from the house also noted that "[t]he primary concern must be protection of the aggrieved person's option to seek a prompt remedy in the best manner available." H.R.Rep. No. 92-238 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2148. The 180-day provision was "designed to make sure that the person aggrieved does not have to endure lengthy delays if the [EEOC] ... does not act with due diligence and speed." *Id.* It "allow[s] the person aggrieved to elect to pursue his or her own remedy under this title where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution." *Id.*

When legislation is not clear, *Chevron* dictates that one ask whether the agency's interpretation "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843,

104 S.Ct. at 2782. The question is not whether the EEOC's view is correct, or whether another view, such as that found by the Court of Appeals for the DC Circuit in *Martini*, is incorrect, but given the alternatives, whether the regulation is a plausible interpretation of § 2000e-5(1)(f). If it is, the regulation is entitled to deference. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 143 n. 4 (3d Cir.1998) (EEOC regulations are accorded substantial deference). The Court finds that 29 C.F.R. § 1601.28(a)(2) is a plausible interpretation of the statute. As such, the Court does not find the regulation, in and of itself, to be invalid. Such does not mean, however, that the grant of discretion to an EEOC official to consider factors related to a particular charge is completely unfettered.

The discretion of the EEOC must be exercised within the context of statutorily defined duties under Title VII. As noted herein, the statute requires the EEOC to notify an employer of the charge of discrimination and to investigate in order to determine if reasonable cause exists to believe that the discrimination occurred. When the EEOC fails to even begin to undertake its duties, as evidenced by the issuance of a right-to-sue letter six days after a charge was filed, it has improperly exercised its discretion. The EEOC investigative process is not a proverbial turnstile through which a complainant directly proceeds at the hastened pace of his or her own choosing en route to federal court. While a complainant has the ability to demand a right-to-sue letter after the passage of 180 days from the date that the charge is filed, within the first 180 days, the complainant can only request one. Within the first 180 days of the filing of the charge, it is the EEOC, and not the complainant, that controls whether the complainant can pursue a private lawsuit. With that control comes a level of responsibility to assess and administer each individual charge of discrimination in order to effectuate its statutorily defined duties. If, for the

purpose of illustration, the EEOC summarily grants each request for an early right-to-sue letter as a matter of course, it would be derelict in its duties to prevent workplace discrimination. Likewise, when the period of time from the filing of the charge to the issuance of the early right-to-sue letter is of such short duration that it appears the EEOC has not undertaken its statutorily defined duties to notify the employer of the charge and to make an investigation thereof, it has failed to properly exercise its discretion. *Cf. Seybert v. West Chester University*, 83 F.Supp.2d 547, 553 (E.D. Pa 2000). The Court finds this latter scenario to be present here.

To be clear, the Court is not attempting to establish a bright-line rule in terms of how soon is too soon for the purpose of issuing an early right-to-sue letter. The Court is finding that when it appears of record that a charge has received little, if any, consideration other than the issuance of an early right to sue notice, the case will be remanded for further administrative processing. For this reason, the Court will grant Defendants' motion and dismiss counts I - III of Plaintiff's complaint, the claims over which it has original jurisdiction..

Supplemental jurisdiction in the district courts is governed by 28 U.S.C. § 1367. The statute provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Kach v. Hose*, 589 F.3d 626 (3d Cir. 2009). The statute also permits a district court to decline the exercise of supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1507 n. 11 (3d Cir.1996). The decision to retain or decline jurisdiction over state-law claims is discretionary. *Annulli v.*

*Panikkar*, 200 F.3d 189, 203 (3d Cir.1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). That discretion “should be based on considerations of ‘judicial economy, convenience and fairness to the litigants.’” *Kjach*, 589 F.3d at 650 (quotations omitted). Based upon those considerations, the Court will decline to exercise supplemental jurisdiction over counts IV - XIII in this case. Counts IV - XIII will be dismissed without prejudice.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SUSAN PATROSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **2:10-cv-967** |
| **v** | ) | |
| | ) | |
| **PRESSLEY RIDGE, PRESSLEY RIDGE FOUNDATION and B. SCOTT FINNELL** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER OF COURT**

AND NOW, this 7th day of December, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Defendants' MOTION TO DISMISS COMPLAINT UNDER RULE 12(b)(6) (Doc. No. 3) is **GRANTED** insofar as:

1) the three claims brought under Title VII of Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.* are **DISMISSED WITHOUT PREJUDICE AND REMANDED FOR FURTHER ADMINISTRATIVE PROCESSING**; and,

2) the Court declines to exercise supplemental jurisdiction over the remaining state law claims, which are **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Violet E. Grayson, Esquire
Email: vegrayson@gmail.com

Martha Hartle Munsch, Esquire
Email: mmunsch@reedsmith.com
Kim M. Watterson, Esquire
Email: kwatterson@reedsmith.com